CAUSE NO. 114-2169-06-C-WR-71,569-03

IN THE COURT OF CRIMINAL APPEALS

AUSTIN, TEXAS

71,569-03

EX PARTE

WILLIE UPSHAW

RE: Applicant's Motion Requesting Consideration to the Refusal of Relief in a Subsequent Writ Application. V.A.C.C.P. Article 11.07

Dear Mr. Abel Acosta, Clerk

Please find Motion inside to be filed with the court. Applicant is unable to serve copies to any other party at this time due to the circumstances that the Unit is on lock down. However, applicant anticipates that you will assist him in this important matter.

Thank you for your time and service.

Sincerely,

Willie Upshaw

Pro-se Applicant

Date 1-22- 2015

MOTION DENIED
DATE: 2/4/15
BY: ___

RECEIVED IN
COURT OF CRIMINAL APPEALS

JAN 28 2015

Abel Acosta, Clerk

CAUSE No. 114-2169-06-C-WR-71,569-03

EX PARTE

WILLIE UPSHAW

§ IN THE COURT OF CRIMINAL
§ APPEALS
§ AUSTIN, TEXAS

APPLICANT'S MOTION REQUESTING CONSIDER-
ATION TO THE REFUSAL OF RELIEF IN APPLIC-
ANT'S SUBSEQUENT APPLICATION FOR WRIT
OF HABEAS CORPUS, V.A.C.C.P. ARTICLE 11.07

TO THE HONORABLE JUDGE(S) OF THE COURT OF CRIMINAL
APPEALS:

On December 11, 2008, Applicant filed his First 11.07 app-
lication in the 114th District Court raising several claims
including ineffective assistance of counsel. The initial app-
lication was denied on March 4, 2009. (WR-71,569-01-114-2169-
06-A).

Applicant then filed a second application in the 114th Dis-
trict Court on January 31, 2011. In that application, the claims
involved undisclosed evidence held and ineffective assistance
of counsel. The Court dismissed the application as a subsequent
writ on April 6, 2011. (WR-71,569-02-114-2169-06-B).

Lastly, Applicant filed his third writ application on August
12, 2014, claiming amongst other things that newly discovered
evidence of case property sheet had been altered, failed to have
as suspect's name on it, and leading to the items on property sheet,
that was not available for DNA testing; it was then discovered
that the items could have been tested, a chain of custody existed
for evaluation of the items having been tainted; identity based
on DNA testing should be determine, exculpatory results is re-
lavant to the offense and conviction, posing support to

applicant's burden of proof that he's innocence. Therefore, the ch. 64 proceeding pursued by applicant through a pro-se Motion, should be looked upon as being relevant to the latest application. See Anderson V. State, 621 S.W. 2d 805, 809 (Tex. Crim. App. 1981)(in context of best evidence rule, prodduction of original document depends on circumstances of each case, the only requirement being that "all reasonable avenues of search should be explored to the extent that reasonable diligence under the circumstances would dictate" and holding that copy should be admitted where "a reasonable effort has been made to obtain the original and there is no suspicion that the copy might differ from the original.").

In fact, the state made a slight arguement in addressing the issue that the response to the request for DNA testing, the findings made by the court, and the failure to return any results, after applicant met the requirements to have the test conducted; isn't cognizable on habeas corpus corpus under sec. 4(a)-(c) for the purpose of satisfying the dictates of the procedure, Article 11.07. However, as a determination of what was intended under the procedure of sec. 4(a)-(c) under article 11.07, is that a preliminary showing of evidence yet being tested, after a court order suggested that by a preponderance of the evidence applicant would not have been prosecuted or convicted if exculpatory results had been obtained through DNA testing; could hardly ever be considered a fair administration of justice. Ex parte Banks, 769 S.W. 2d 539, 546-47 (Tex. Cr. App. 1989).

2.

Furthermore, having been provided with documents from another legal proceeding (Ch. 64 of the Code of criminal Procedure) that consist of information that had not been presented to applicant for review when, in all sense, due to the record indicating that applicant had waive the right to the appearence of either evidence (Stipulation o Evidence) the fact that Ch. 64 is held to a less strenuous approach than Art. 11.07 (4) regarding the conviction; applicant's preliminary showing for consideration of his subsequent writ as opposed to the preponderance of the evidence having been found by the convicting court to be of relevance, and exculpatory in nature; the court should recommend that the finality of the conviction should'nt rest on a procedural bar determination alone, without giving credence to the order of testing evidence, the fact finding inquiry, and the abandonment of ever producing any test results. See Engle v. Issac, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed. 2d 783 (1982) (("[I]n appropriate cases the principals of comodity and finality, that inform the concepts of cause and prejudice " must yeild to imperative of correcting a fundamentally unjust incarceration".).

In this regard, the state made little or no serious attempt to argue or substantiate the issue of ever having a test result produced after multiple orders had been handed down by the convicting court, herein, all things should constitute abandonment of the issue, thereby, giving the court of criminal Appeals total jurisdiction of the issue for resolution. Woods v. Cockrell, 307 F. 3d at 357 (a statement of a legal conclusion, without a serious attempt to argue or substantiate the issue, is a waiver or abandonment of the issue).

3.

In retrospective, the filing of the subsequent writ alleged grounds that could not have previously been presented where there was an adequate remedy at law pending. The properly filed Ch. 64 Motion created proof that further factual information concerning evidence used at trial contributed to the conviction of applicant without the evidence ever being tested. In reviewing the Court's order, the convicting court made a reasonable determination of the facts, that identity was an issue in the case, and that the applicant had made a showing by a preponderance of the evidence, that he would not have been ~~prosecuted~~ or convicted if the exculpatory evidence had been tested with results obtained through DNA testing. Thomas V. State, 841 S.W.2d 399, 407 (Tex. Crim. App. 1992).

In contrast, without any results having been obtained, the substance on clothing, towel, knife could be a variety of household liquids such as Kool-aid, ketchup, paint, nailpolish, etc., in which the State clearly disregarded in the Ch. 64 proceeding, thereby, in the absence of a test result, applicant's alleged grounds should not be subject to any procedural violation when the finality of the conviction relied on the test results. See Bonvillain V. Blackburn, 780 F.2d 1248, 1250 (5th Cir. 1986) ("in a habeas proceeding, the petitioner has the burden of proving that he is entitled to relief."), also see Ex parte Thomas, ~~906~~ S.W.2d 22, 24 (Tex. Crim. App. 1995). Moreover, the habeas court inexplicitly found that the attached documents in the State's response to the DNA testing does not consist of "newly discovered evidence" since it was part of

applicant's trial subjecting such to discovery. To the Contrary, the record in the Criminal proceeding dosen't Consist of any pre-trial discovery motions being filed for applicant's review. Thus, since the applicant's attorney had her focus on a ple agree-ment, it was possible that the state solemnly declared that such information cannot be discoverable in any event that a plea of guilt arises; in turn, serves as a formidable barrier under the stipulations provided that applicant had forfeit the right to discovery. None the less, this Court has entertained motions for reconsideration, wherefore, the dismissal of the sub-sequent writ under Sec. 4 (a)-(c) meant that the Court de-clined to Consider the claim for reasons unrelated to the claims merits. Ex parte Torres, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997)., also see Ex parte Lemke, 13 S.W.3d 791, 793-95 (Tex. Crim. App. 2000) and Emerson V. Johnson, 243 F.3d 931 (5th Cir. 2001).

Therefore, this Court should reconsider the writ on the grounds that finality is govern by reasonableness. Hence-forth, the State abandon the reading of any test results ever found which can only mean that (1) the items were tainted, (2) something other than blood had been discovered (3) through an insufficient chain of custody, the items isn't Capable of being tested. Surely, applicant's Conviction Cannot rest on a Critical issue (DNA) that he met the requirements for, but, such was halted and abandon without any explaination by either appointed counsel nor state who was order to con-

duct and complete the process. Without ever having the test results how could applicant be cited with Sec. 4 (a)-(c) on the grounds that such could have been brought up in the previous applications when the factual basis (results) had not been determined, nor had the legal basis (Courts Finding in Motion for DNA) been satisfied in order for applicant to meet either of the two exceptions. in Art. 11-07 (4).

In this writ, the court should not completely neglect to consider that applicant made a showing as to why he is entitled to have his writ considered, where, without the results, the C.D. which had been destroyed containing the alleged victim's statement, and the altering of documents during police processing the case, supports the existence of "no evidence" in which applicant should not be restrained upon. Accordingly, the filing of a DNA Motion, regardless of any plea isn't bound by the procedural bar, whereas, the court may look into the allegations setforth in the record, the DNA Motion; in connection with the claims in the subsequent writ, and make findings that the previous writ proceeding, under Ch. 64, contained unresolved facts material to the legality of Applicant's confinement, where there is ample evidence in the record for the court to rule on.

<u>PRAYER</u>

Wherefore, premises considered, the applicant prays that

this Court find that applicant's request requires Consideration into the fair administration of justice, that there existed the necessity to determine the results of the testing, which applicant sought as an adequate remedy at law, prior to the filing of another writ, and recommend that, Since Applicant he has made a proper showing, based on determinations found to be relevant in this proceeding; the preponderance of that evidence, had it been obtained, but for a violation of the United States Constitution, no rational juror could have found applicant guilty **beyond** a reasonable doubt, had DNA testing been available during his Criminal trial proceeding.

Respectfully Submitted,

Willie Upshaw

Pro-Se Applicant
#1423175
Beto One Unit
3391 FM 3328
Tennessee Colony, TX 75880

7.